THE STATE OF NEW JERSEY v. THE CITY OF WILDWOOD, IN THE COUNTY OF CAPE MAY.

Submitted March 21, 1912—Decided August 14, 1912.

1. "An act to enable adjoining municipalities, other than cities, lying in the same county, to consolidate and form a city," approved April 11th, 1908 (*Pamph. L.*, *p.* 295)—*Held*, constitutional.
2. Where a new city having less than twelve thousand inhabitants was created since 1899 under "An act to enable adjoining municipalities, other than cities, lying in the same county, to consolidate and form a city" (*Pamph. L.* 1908, *p.* 295), and held a municipal election for officers at the general election in November preceding the first day of January next after the making and filing of the order of the justice declaring the consolidating municipalities to be a city—*Held*, that such election was validated by "An act relating to and providing for the government of cities in this state containing a population of less than twelve thousand inhabitants," approved May 2d, 1911 (*Pamph. L.*, *p.* 755), and its corporate existence began January 1st next succeeding such election.
3. *Quæry.* Is the act of 1911 (*Pamph. L.*, *p.* 755) constitutional?

On information in the nature of *quo warranto*.

Before Justices BERGEN, VOORHEES and KALISCH.

For the informant, *Edmund Wilson,* attorney-general, and *Walter H. Bacon.*

For the defendant, *Harrison H. Voorhees* and *Louis H. Miller.*

The opinion of the court was delivered by

VOORHEES, J. The attorney-general by information exhibited against "The City of Wildwood in the County of Cape May" has attacked the legality of the incorporation of that city, and its right and power to elect municipal officers, prior to the first day of January, A. D. 1912, and its right to exercise the functions and franchises of municipal government prior to the first day of January, 1913, and praying judgment that the order creating said city be set aside, or that the certificate of election of the officers of said municipality be annulled.

The information sets out the following facts: That the borough of Wildwood and the borough of Holly Beach City were separate municipalities of Cape May county, and that on June 27th, 1911, an order was made by a justice of the Supreme Court that a special election be held on August 29th, 1911, for the purpose of determining whether said boroughs, together with the boroughs of North Wildwood and Wildwood Crest, should incorporate as a city under "An act to enable adjoining municipalities other than cities lying in the same county to consolidate and form a city." *Pamph. L.* 1908, *p.* 295; *Pamph. L.* 1910, *p.* 238.

That on the fifth day of September another order was made by said justice which, after reciting that the first named two boroughs had voted in favor of consolidation as a city, directed that they proceed to incorporate under said act, and that the governing bodies thereof should, within twenty days after the date of said order, hold a joint meeting to decide upon a name, and that the justice in the same order also appointed commissioners to divide the new city into wards and

election precincts and to make report; that on the twenty-third day of September, another order was made, wherein the said two boroughs were declared by such justice to be a city by the name of "The City of Wildwood in the County of Cape May;" that on the seventh day of November an election in the newly-created city was held to elect officers thereof, and on the nineteenth of November the board of county canvassers of election made return of the officers elected thereat; and on the first day of January, 1912, the officers so declared elected assumed their respective offices, and are now exercising the duties thereof.

The defendant has filed pleas setting up in detail the proceedings under said act by which it claims to have been duly incorporated. To these pleas, the informant has demurred.

The grounds of demurrer set up the unconstitutionality of the act of 1908 above named, in that its object is not expressed in its title; that it attempts to confer legislative authority upon a justice of the Supreme Court; that the act is private, local and special, regulating the internal affairs of towns; that it provides that existing laws shall be applicable to the municipality, without inserting the same in the act; and that the justice of the Supreme Court was without jurisdiction to call a special election, or to appoint commissioners, or to declare said city to be a city, and because certain acts of the legislature are not operative in the territory theretofore known as the borough of Wildwood and Holly Beach City.

Concerning the title of the act, it is argued that it goes beyond the object expressed and attempts to provide for and regulate the form of government, provides for the method of transfers of money and property, for the continuance in office of certain firemen, policemen, &c., and otherwise attempts to formulate a code for the government of the city, none of which are indicated in the title, and that there were, at the time of the passage of the act, already in existence "An act relating to newly created municipalities." 3 *Comp. Stat.*, p. 3462 *et seq.*

We do not think that the title to this act embraces a double object or that the body of the act attempts to do so. That is to say, all its provisions are germane to the single purpose of creating a new city out of adjoining municipalities.

It is not perceived that the act attempts to regulate the form of government of the newly-created municipality. The provision for the transfer of moneys and property of the constituent bodies is a mere step in the scheme of completing the consolidation. These matters are purely incidental to the main purpose of the act, and taken together make an efficacious, complete and workable whole. *In re Haynes,* 25 *Vroom* 6.

It is undoubtedly true that so much of "An act relating to newly created municipalities" (*Pamph. L.* 1898, *p.* 28) will, after such consolidation, come into play and operate upon the new city, or so much of that act as may not be inconsistent with the provisions of the act of incorporation. That a repealer of inconsistent legislation should be expressed in the title of the act is not supported by any cited authority. We therefore think there is no infirmity in the title.

It also seems to us that the distinguishing mark provided for by the act which makes consolidation under it possible, viz., that the municipalities shall adjoin each other, is a proper characteristic to designate a class, and this takes the act out of the category of local or special legislation.

It is attempted to be reasoned that the amendment of 1910, affecting section 2 of the act of 1908, by providing that the special election might be ordered upon a petition signed by at least five per cent. of the legal voters, makes it possible by this machinery to manufacture a city out of two municipalities, where the total vote may have been thirteen in one and twenty-three in another, if they adjoin each other; and that by the votes of a majority of thirteen and twenty-three, assuming all to have voted, an incorporation might arise, to be governed by "An act relating to and providing for the government of cities in this state, containing a

population of less than twelve thousand inhabitants." *Pamph. L.* 1897, *p.* 46.

It is pointed out that in such a city there might not be voters enough to hold all the offices provided for. This may be an argument that the legislation is unfortunate, but it does not appeal to us as a valid, constitutional reason against the power of the legislature to enact it. It does not pertain to courts to pass upon the wisdom or unwisdom of the legislative branch in the enactment of laws.

It is next contended that no jurisdiction resides in the justice who acted to make the orders. It is argued that under section 5, where it is provided that he shall order contiguous municipalities to incorporate, no means have been provided whereby he may ascertain the fact of contiguity.

The petition originally to be presented under oath must contain the general allegation as to the adjacency of the municipalities intending to take advantage of the statute. Moreover, boroughs are to be incorporated by special act (*Comp. Stat., p.* 226), which would also reveal their contiguity, and in addition the territorial extent and the relative positions of municipalities are matters of judicial notice. 1 *Gr. Ev.,* § 6.

In the case in hand, the constituent parts of the new city are recognized by the public laws as adjoining. The act incorporating the borough of Wildwood (*Pamph. L.* 1897, *p.* 344) describes its fourth boundary line as binding on the line of the borough of Holly Beach City. This point must, therefore, fail.

The state makes the further point that, inasmuch as the order to the constituents to hold a joint meeting under section 6 is not an order in a proceeding, suit or action pending, to which their governing bodies are parties, and therefore is not a judicial function, no power resides in the justice to make it, hence the municipalities are not bound to obey such order.

The municipalities instituted the proceedings by their petitions, and having so instituted the scheme authorized by the act, the legislature has cast upon the justice of the Supreme

Court the ministerial duty to call a special election, and upon the returns made to him, showing its result, to make an order to incorporate. He is also empowered to appoint commissioners, and finally to declare the consolidation complete. If this is the exercise of a power "properly belonging" to the legislative department, the contention of the state may have force, but an examination of the cases will indicate that such is not the fact. *Ross* v. *Freeholders,* 40 *Vroom* 291; *Schwarz* v. *Dover,* 41 *Id.* 502; *Bumsted* v. *Henry,* 45 *Id.* 162 (at *p.* 165).

We conclude that the legislature rightfully conferred the powers above recited upon a justice of the Supreme Court, and that the seventh section of the statute, directing that the order of the justice "shall also provide for the appointment of five commissioners," gives the power of appointment to him. The result of the case of *Moreau* v. *Freeholders,* 39 *Vroom* 480, is not applicable here. It was there decided that matters which "properly belong," in a constitutional sense (*Ross* v. *Freeholders, supra*), to the legislative department, cannot be delegated to those belonging to, or constituting either of the other departments. Our conclusion is that the act is valid.

This brings us to a consideration of the validity of the election of officers held previous to January 1st, 1912, and whether the new city may exercise its franchises before January 1st, 1913.

Section 8 of the act provides that from and after January 1st next following the making of the order declaring the municipalities to be a city, the consolidating units shall be a body corporate, and section 9 declares that these units shall continue to exist till noon of January 1st next succeeding the first municipal election, and the respective officers of the combining units shall continue in office until January 1st next succeeding such first municipal election as if they had not become incorporated as a city. Under these provisions it is not doubted that normally the new city would take on corporate life on January 1st, 1912, sufficient to hold an election. The election for officers is called

in the state's brief "prenatal" because held in November, 1911, while the incorporation was yet inchoate.

Section 17, after providing that all general acts relative to the government of the population of the new city shall apply to such created city, proceeds to declare that whenever any such general act contains a referendum, the constituent municipalities (not the newly-created city in its prenatal existence) may hold an election, by virtue of such referendum before January 1st, on which the new city is to be born, and in the event of the adoption of such general act, may elect the officers provided by such general act, at the general election to be held in November preceding the birthday, and after January 1st, shall be governed by the act thus adopted; provided, however, the special election under the referendum shall be held at least sixty days before the November election.

The statements of the plea pertinent to this subject are that "the legal voters of said inchoate new city did at the general election held on the seventh day of November, 1911, hold the first municipal election for officers for government of the new city." That the voters voted at the polling places and in the wards established by the commissioners, and that on January 1st, 1912, the persons so elected assumed office.

It further alleges that it has not adopted any general law by vote of its inhabitants; that it has less than twelve thousand inhabitants, and is governed by the act of 1897 (*Pamph. L., p.* 46), and that by "An act relating to and providing for the government of cities in this state containing a population of less than twelve thousand inhabitants" (*Pamph. L.* 1911, *p.* 755), the former act has become and is applicable to it.

Unaided by the act of 1911, *supra*, it seems clear that the respondent has not brought itself within the conditions prescribed by the seventeenth section of the consolidating act of 1908, in order to make its corporate existence begin on January 1st, 1912.

We further deem it obvious that no municipal election

could be held in the new city until after January 1st, succeeding the order for consolidation, and therefore the consolidated units would continue to exist as separate entities until January 1st, 1913, unless, in the meantime, the first municipal election shall have taken place.

An examination of the act of 1911, however, discloses that its design is to make applicable to all cities of less than twelve thousand inhabitants, created after March 21st, 1899, that have not adopted by referendum election, the provisions of an act entitled "An act relating to and providing for the government of cities of this state containing a population of less than twelve thousand inhabitants," approved March 21st, 1899 (*Pamph. L., p.* 96), an act of the same title, approved March 24th, 1897 (*Pamph. L., p.* 46), which is thereby declared to be a general law and applicable to all such cities, and to provide for their government by the latter act, although the inhabitants of such cities have not adopted its provisions.

The second section of this statute validates all elections and appointments and other proceedings theretofore lawfully conducted in accordance with the act of 1897. This curative act is set out in the pleas as applicable to the new city, and its constitutionality has not been attacked by the relator.

The pleas demurred to set out that the new city has less than twelve thousand inhabitants, and that it is governed by the act of 1897, and its supplements, among which is the act of 1911, and that it elected prior to January 1st, 1912, officers prescribed under the act of 1897.

This election seems to have been lawfully held within the meaning of that expression as used in the act of 1911, which is that it was conducted according to the forms of law relative to holding elections. It was lawfully held, although the polling places were in the old wards as they existed before the commissioners made the new districting. Voting at the old polling places in the old wards did not deprive any voter of his vote in the coalescing entities, for all the territory of each combining municipality became the exact

territory of the newly-created city. No person within such territory had his right of suffrage taken away or impaired by this fact.

We, therefore, are of opinion that the act of 1911 has remedied all irregularities which have been pointed out in the briefs of counsel, and that the election for officers held in November, 1911, has by force of that statute become the first municipal election, and in consequence the corporate existence of the respondent became perfected on January 1st, 1912.

The demurrer will be overruled.