34 N.J. Super. 177 (1955)
111 A.2d 908
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MARGARET PICHADOU, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 14, 1955.
Decided February 24, 1955.
Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Russell Fleming argued the cause for appellant (Mr. Irving W. Rubin, attorney).
*178 Mr. John B. Molineux, Assistant Prosecutor, argued the cause for respondent (Mr. Alex Eber, Prosecutor for Middlesex County).
The opinion of the court was delivered by JAYNE, J.A.D.
Strangely, either of the antithetical emotions of glee or gloom seemingly tends to recommend an indulgence in alcohol. The prehistoric caveman is said to have fondled his earthen crock of fermented berries to elevate him from the depths of solitude, while the Bible informs us that the joyful Noah encircled by companions rather than lonesome chose as his first project after mooring his vessel the planting of "a vineyard; and he drank of the wine and was drunken." Genesis 9:20.
June 12, 1954 was the birthday of the defendant, Margaret Pichadou. She decided to celebrate the anniversary of her nativity by witnessing the racing of mares, geldings and colts at the Monmouth Park track. We infer that the adventure was both entertaining and profitable for, said she, "I won on the ponies today."
But alas. In driving home in her automobile she was apprehended at 10:10 P.M. by the police in East Brunswick Township, Middlesex County, charged and subsequently convicted of operating a motor vehicle while under the influence of intoxicating liquor in violation of N.J.S.A. 39:4-50.
This case is distinctly unprecedented in that the defendant does not confine her admissions to the consumption of the conventional quantity of "only two beers," but unreservedly confesses that during the afternoon and early evening she had imbibed only six or seven drinks of Seagram's whiskey. Experience has revealed that defendants in these cases do not exaggerate their estimates. Moreover the defendant rejected the frequently utilized defense that she was under the effects of antihistamines or barbiturates.
A trial de novo in the Middlesex County Court resulted in a judgment of conviction confirmatory of that of the municipal court. We observe in the record an abundance *179 of evidence introduced by the State which is descriptive of the manifestations of the defendant's intoxication. But for our judicial duty, we would prefer not to reproduce its disclosure.
To sustain our conclusion we need only refer to the evidence that the defendant's car proceeded off the left side of the highway familiar to her, striking two traffic signs, which immobilized it. She did not alight from the vehicle but remained seated behind the steering wheel, where the policemen discovered her. Her breath circulated a pungent odor of alcohol. She was assisted into the police car and transported to police headquarters, where the several witnesses noticed her speech to be "incoherent," "blurry," "slurred," and "as if her mouth was full of bubble gum." She was unable to use the telephone. She addressed the police officers as "darling." She staggered when attempting to walk.
The police commissioner who happened to be in headquarters undertook to subject the defendant to some tests he had previously seen administered. Let him tell about it:
"I asked her to stand erect and extend her right hand and close her eyes and touch her nose, and she couldn't find her face, much less her nose. I asked her to do it with both hands, and the same response was received. I then asked her to walk to Sergeant Choma across the row of blocks in the floor. The floor is similar to this. She staggered over to Sergeant Choma. She said, `There you are, sweetheart.'"
When the commissioner was asked at the trial to express his opinion of the defendant's condition, he replied, "I would say that she was plastered."
In the present instance it is fair to state that the police made a locally exhaustive endeavor to obtain the services of a physician but without success. The police commissioner was asked at the trial:
"Q. Why was it so urgent to get a doctor? Wasn't there any doubt? A. In police procedure as well as the law practice we have certain ethics that we live by. We are in the police business not *180 to persecute people but to protect people, and we want to give everyone we come in contact with the benefit of the doubt. As a matter of fact, we give motorists or anyone else the benefit of the doubt."
Able counsel, in a tantalizing quest for some sort of a reason with which to attack the judgment of guilty, regenerates the demised argument that alcoholic intoxication can only be proved under our law by the testimony of an expert witness such as a physician.
That contention seems to collide with the decisions announced in Castner v. Sliker, 33 N.J.L. 95 (Sup. Ct. 1868), affirmed Id., 33 N.J.L. 507 (E. & A. 1869); Searles v. Public Service R. Co., 100 N.J.L. 222 (Sup. Ct. 1924); State v. Myers, 136 N.J.L. 288, 290 (Sup. Ct. 1947); State v. Shiren, 9 N.J. 445, 455 (1952); and see, 2 Wigmore (3d ed.), § 235; 2 Wharton's Crim. Ev. (11th ed.), 1761, § 1000; 8 Blashfield Cyc. of Auto Law, 447, § 5476.
It is not to be doubted that the average witness of ordinary intelligence, although lacking special skill, knowledge and experience but who has had the opportunity of observation, may testify whether a certain person was sober or intoxicated. Neither our statutory law nor any procedural rule requires the testimony of medical experts in the prosecution of offenses of this nature.
It appears now to be the uniform practice in these cases, where possible, to have the accused promptly examined by a physician whose sworn diagnosis is elicited. A statutory provision assuring the doctor of compensation for his services wisely encourages the practice, but the statute does not imperatively exact its pursuit.
All tests of alcoholic intoxication from the simple ones of asking the subject to give the date, tell the time, read, stand on one foot, walk a line, and perform similar feats, as well as the chemical analysis tests of breath, blood, urine, or saliva, have a limited period of punctuality within which the efficient usefulness of their performance depends. Given time, the fire of alcoholic intoxication burns low or out, and so does the weight of the evidence.
*181 Lay evidence is usually available; expert testimony is not always, as in the present case, promptly procurable. The administration of justice in this class of proceedings exhibits no persuasive reason for us to hold that a state of alcoholic intoxication of the degree contemplated by the applicable statute cannot be factually established in the absence of expert testimony. Our determination is to the contrary. However sympathetically the folly of driving an automobile upon our public highways while under the disabling effects of intoxicating liquor may be looked upon in some instances, there must be a transcendent realization of the gravity of the offense and the consequent tragic threat to the safety of others.
We observe in the record of the present case evidence adequately to have justified the trial judge in adjudging the defendant guilty beyond a reasonable doubt of the offense charged.
The inadvertent circumstance that the appeal was taken prematurely in the interval between the rendition of the trial court's decision and the imposition of sentence is not of critical consequence. See State v. Sagarese, 34 N.J. Super. 126 (App. Div. 1955).
Affirmed.