59 N.J. Super. 434 (1960)
157 A.2d 847
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN A. HANSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 25, 1960.
Decided February 5, 1960.
*437 Before Judges GOLDMANN, CONFORD and FREUND.
Mr. Franklin W. Kielb argued the cause for appellant.
Mr. William L. Boyan, Deputy Attorney General, argued the cause for respondent (Mr. David D. Furman, Attorney General, attorney).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant appeals from a judgment of the Warren County Court finding him guilty of drunken driving. He was sentenced to serve a three-month term in county jail and his driver's license was revoked for a period of ten years. The prison sentence and revocation were mandatory under N.J.S.A. 39:4-50, this being defendant's second drunken driving conviction. The first was in February 1955, at which time his driver's license was revoked for two years under the same statute. It was restored in February 1957, when the Director of Motor Vehicles, pursuant to R.S. 39:5-32, issued a validated license which defendant was to carry with him for three years.
A validated license, commonly known as a "red" license, from its color, is issued upon the termination of the revocation period imposed by a municipal magistrate or the Director of Motor Vehicles. On its reverse side appears the reason for the revocation of the original driver's license, the date and nature of the offense, and the dates of the revocation and restoration. When the validated license period terminates, the regular license is automatically returned *438 to the driver. Division of Motor Vehicles, Rules Governing Issuance and Administration of Validated Driver Licenses (July 1, 1952).
Defendant was arrested for drunken driving April 13, 1958. The complaint filed with the municipal court carried the word "red" after the driver's license number. The matter was heard some eight months later; the magistrate found defendant guilty as charged, sentenced him to three months in county jail and revoked his license for ten years. Defendant thereupon appealed to the Warren County Court, in accordance with R.R. 3:10-1 et seq. Such an appeal is heard de novo. R.R. 3:10-10(a).
Defendant's contention in the County Court was that he had not received a fair trial because the municipal magistrate had before him a complaint indicating that defendant's license was "red." To assure complete justice the State offered to obliterate from the complaint any reference to a "red" license and to have the case tried before a County or Superior Court judge, specially assigned, who did not know that defendant had or was alleged to have a validated license.
Instead of acting on the offer, defendant moved before the County Court to have the complaint dismissed on the ground that its reference to a "red" license was fundamentally unfair, highly prejudicial, and militated against an impartial hearing. The State countered with a motion to amend the complaint by deleting any reference to a "red" license. The county judge denied defendant's motion and granted the State's.
Defendant then sought leave to appeal under R.R. 2:2-3 (a) from the order denying his motion. This Part denied leave to appeal, but suggested at the oral argument that considerations of fairness would seem to call for a retrial of the matter before a judge who knew nothing of defendant's license's being "red." Thereupon the State again offered to have the case heard de novo by a judge without knowledge of the prior offense. Defense counsel *439 requested an opportunity to discuss the matter with his client. He eventually declined to act on our recommendation, stating that "the item of the judge is immaterial." Accordingly, the order denying leave to appeal contained no provision that the matter be heard by a judge without prior knowledge of the case, and directed the County Court to proceed in accordance with R.R. 3:10-1 et seq.
The case came on for hearing on the merits before Judge Schechter, the only county judge in Warren County, who, of course, knew that defendant's license was "red" because he had earlier heard the motion to dismiss the complaint. He found defendant guilty as charged, and entered the judgment required by law and now before us on appeal.
Defendant argues two grounds for reversal: (1) the original presence of the word "red" on the complaint deprived him of a fair trial de novo before the County Court; and (2) the statement in the notice of appeal of the nature of the offense and the sentence imposed, required under R.R. 3:10-3, was highly prejudicial because it brought to the attention of the county judge the fact that defendant had previously been convicted of drunken driving, so that in the circumstances the rule operated to deprive defendant of due process of law. Nowhere is it contended that defendant was not guilty of drunken driving.
At the start of the oral argument counsel for defendant suggested that it would perhaps be inappropriate for this Part of the Appellate Division to hear the appeal because my two colleagues sat in the Part when it heard the motion for leave to appeal. Under direct questioning the suggestion blossomed into a motion that the two judges disqualify themselves. The motion was summarily denied.
Counsel cited no authority, statutory or otherwise, for disqualification. None of the grounds set out in N.J.S. 2A:15-49 is applicable  kinship, prior representation of a party, prior opinion upon the matters in question, or personal interest in the litigation. No other ground suggests itself. As we said in Clawans v. Schakat, 49 N.J. Super. 415, 420 *440 (1958), a judge is not required to withdraw from the hearing of a case upon the mere suggestion that he is disqualified to sit; indeed, it would be improper for him to do so unless the alleged cause of recusation is known by him to exist or be shown by proof to be true in fact.
Denial of leave to appeal from an interlocutory order or judgment is a not uncommon occurrence, particularly in light of what this court said in Romano v. Maglio, 41 N.J. Super. 561, 567-8 (1956). In denying leave the court does not, of course, presume to pass upon the merits of the cause in any respect, either as to the issues that may then suggest themselves or, surely, as to issues which may emerge after the matter has been fully heard at the trial level.
Counsel also complained that the Attorney General's office had requested the clerk to assign the appeal to this Part of the Appellate Division instead of Part B. This is not so; all that was done was to call the clerk's attention to the fact that Part A had previously considered the motion for leave to appeal. The practice has been for the clerk to assign an appeal to whatever Part has dealt with the case in any prior aspect. The reason is fairly obvious: the Part already knows something of the background of the case and there is a resultant saving of judicial time.
We address ourselves to the contention that the mere presence of the notation "red" on the original complaint was prejudicial and denied defendant a fair trial because it served to acquaint the county judge of the previous drunken driving conviction. Initially, it may be observed that validated ("red") licenses may be issued in cases other than drunken driving. Indeed, most of them are. Under the New Jersey point system recently inaugurated by the Division of Motor Vehicles, a driver amassing 12 or more points within a three-year period dating from the latest violation becomes subject to a hearing before the Director on a rule to show cause why his driving privilege should not be revoked. Only moving violations, such as speeding, careless or reckless driving, ignoring a traffic signal, leaving the scene of an *441 accident, and the like, are charged against the driver's record. From 3 to 12 points may be charged against a driver; involvement in a fatal accident (if held responsible), or driving or permitting another to drive while under the influence of intoxicating liquors or drugs, carries the maximum. Accordingly, the word "red" on the complaint could have covered any number of situations.
Dealing with the matter more fundamentally, it may be conceded that, in principle, a trial judge sitting in a quasi-criminal proceeding like the present one should not be apprised prior to his determination of guilt or innocence of the fact that the defendant had previously been convicted of an offense involving revocation of his license. See State v. Kociolek, 23 N.J. 400, 418-420 (1957). Although many of the provisions of the Motor Vehicle Act require that the trial judge know about a defendant's prior record  see, for example, N.J.S.A. 39:3-19.1 (omnibus registration), 39:3-80 (rubber tire equipment), 39:3-84.3 (overweight and oversize (except overloading)), 39:4-49 (tampering with vehicle), 39:4-50 (drunken driving), 39:4-52 (racing on highway), 39:4-128.1 (stopping or slowing down for stopped school bus), 39:4-129 (hit-and-run), 39:5C-1 (racing on highway), 39:12-12 (driver's school licensees) and 4:22-25.2 (motorist hitting animal)  this information is needed only for the purpose of fixing the penalty, and not determining guilt. We are confident that a county judge sitting as finder of the facts as to guilt or innocence on a trial de novo in a drunken driver appeal will try to put out of his mind any information that may have come to him regarding a defendant's prior motor vehicle record. Admittedly, it is impossible to assess to just what degree the human mind may subconsciously be conditioned by such information. The possibility of prejudice exists, although entirely minimal.
However, all this can give defendant no comfort. In the first place, the appeal to the County Court brought up whatever record existed in the municipal court. There was no transcript of testimony here but, if nothing more, the complaint *442 and the judgment of conviction had to be delivered to the County Court clerk by the clerk of the municipal court upon the filing of the notice of appeal. R.R. 3:10-4. The back of the complaint carried the record of action taken by the municipal magistrate: the plea, the disposition, the penalty, and such summary of testimony or comments as the clerk or magistrate might make. See Local Criminal Court Form 12 ("Uniform Traffic Ticket  Complaint"). This in itself apprised the County Court of the fact that defendant was a two-time offender under N.J.S.A. 39:4-50, because of the penalty imposed  three months in county jail and forfeiture of the right to operate a motor vehicle for a period of ten years. And in a case where the municipal court proceedings are recorded stenographically or by a sound recording device, R.R. 8:7-5, in which case the matter is ordinarily reviewed in the County Court on the original transcript, R.R. 3:10-10(a), the transcript obviously would show that the defendant was a second offender.
Secondly, defendant was twice afforded the opportunity of having his case retried de novo before a judge who would have before him a complaint devoid of any reference to prior traffic convictions, for drunken driving or otherwise. The complaint had been amended on the State's motion, and this under the power granted the County Court to do so on appeals from inferior courts of limited jurisdiction, R.R. 3:10-10(b). (Incidentally, under that rule the appeal operates as a waiver of all defects in the record and is a consent that the County Court may amend the complaint. For an exposition of the history and operation of the rule see our opinion in State v. Henry, 56 N.J. Super. 1, 11 et seq. (1959); see also State v. Menke, 25 N.J. 66 (1957)). Defendant refused to accept the offer to go before another judge; he may not now complain.
We have examined People of State of New York v. Man, 5 Misc.2d 852, 165 N.Y.S.2d 783 (Cty. Ct. 1956), and State v. Muraski, 6 N.J. Super. 36 (App. Div. 1949), cited by defendant as supporting his *443 position. Not only is the setting of the present cause altogether different from that in Man, but that decision was handed down by a County Court. It is one which we find unacceptable, whether viewed in the light of logic, law or policy. Nor is Muraski at all apposite. R.R. 3:10-1 et seq. was not involved, for we granted direct review of the conviction in the municipal court pursuant to then Rule 2:12-1 (now R.R. 2:12-1). In that case we held that a municipal magistrate who had almost been struck by defendant's automobile and had "subscribed" to the complaint against him for drunken driving should not have tried and convicted him for the offense. We observed that the case was not one where the defendant would have gone untried for want of a tribunal; another magistrate could have sat, as authorized by N.J.S.A. 39:5-3. That observation undoubtedly inspired the State to propose, before trial in the County Court as well as on defendant's motion for leave to appeal, the substitution of a judge as to whom there could be no objection.
There is no merit in defendant's second ground of appeal wherein he argues that the provision of R.R. 3:10-3, requiring that the notice of appeal to the County Court state the offense and the sentence imposed in the municipal court, deprived him of due process in the circumstances of this case. The objection is raised for the first time here. Not having been made below, it will not be heard on appeal. State v. Pillo, 15 N.J. 99, 102 (1954). But that aside, we cannot agree with defendant that the operation of the rule automatically amounts to a denial of due process. Such prejudice as might be present in a reference to the sentence in the notice of appeal is necessarily implicit in any appeal to the County Court from a municipal court. It is an essential part of the appellate process and cannot be complained of. In any event, the endorsement of the sentence on the complaint and (in the case of a transcript) the record of the sentence would bring the same information to the attention of a county judge.
*444 We conclude there is no justifiable basis for defendant's contention that he must be allowed to go free because "red" appeared on the complaint. He twice rejected the opportunity given him to have a trial de novo free of the obnoxious influence he now complains of. He seeks total exculpation from the charge of second-time drunken driving on the technicality of a notation which has been taken out of the case by amendment. This attempt runs counter to the reasons we have expressed and is contrary to the spirit of the rule which contemplates that when a defendant gets a trial de novo in the County Court the record is wiped clean of all defects and irregularities in the proceedings before the municipal magistrate. R.R. 3:10-10(b).
One additional observation regarding the proceedings before the municipal magistrate in this case. Since the decision in State v. Laird, 25 N.J. 298 (1957), magistrates ordinarily do not proceed with sentencing a defendant found guilty of a violation where a mandatory higher penalty for subsequent offenses is prescribed until they have at hand a written record showing the defendant's prior convictions, if any. Such written record is obtained from the Division of Motor Vehicles. In the Laird case the defendant had paid the fine and costs imposed for drunken driving and had been discharged, and this on the assumption that he was a first offender. It was later discovered that he was in fact a second offender, and he was directed to appear in municipal court for "re-sentencing," at which time the mandatory penalty under N.J.S.A. 39:4-50 was imposed. The Supreme Court held that this was in effect putting defendant in double jeopardy, and the municipal magistrate was without authority to resentence him as a second offender. It indicated that in any such case the remedy was for the magistrate to make adequate inquiry before the imposition of sentence.
Although we recognize the practical difficulties of the situation, particularly where the municipal court is *445 without a clerk, a magistrate should not refer to the record of prior offenses until he has heard the case and arrived at a conclusion of guilt and announced it. He can then call for the record and use it in imposing an appropriate sentence. Where there is a clerk, the clerk can get the record from the Division of Motor Vehicles before trial and place it in his file, where it should remain until called for by the magistrate after he has heard and decided the issue of defendant's guilt or innocence.
Affirmed.