60 N.J. Super. 505 (1960)
159 A.2d 448
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
VICTOR GUERRIDO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 28, 1960.
Decided April 1, 1960.
*507 Before Judges GOLDMANN, CONFORD and FREUND.
Mr. John Dale Seip argued the cause for appellant.
Mr. Clyde C. Jefferson, Hunterdon County Prosecutor, argued the cause for respondent.
*508 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant appeals from a judgment of the Hunterdon County Court convicting him of driving a motor vehicle while under the influence of intoxicating liquor, in violation of N.J.S.A. 39:4-50. The trial court denied defendant's motion to dismiss at the close of the State's case. Defendant then testified and at the conclusion of the entire case the court found him guilty as charged.
Defendant contends that the evidence adduced by the State was not sufficient to permit a finding that he was guilty of drunken driving, and that at the end of the entire case the proofs required an acquittal. We proceed to summarize the evidence at the close of the State's case.
At about 5 P.M. on July 11, 1959 the complaining witness Williams returned to his farm, after having been away for about two hours. He turned into a winding driveway leading to the Williams dwelling set back a considerable distance from the highway and bordered by a fence, trees and plantings. Several hundred yards in from the main road he noticed a large section of fence had been overthrown and broken, and a tree some 8"-10" in diameter and located 20' away had also been knocked over. Further up the driveway he found defendant sitting in his car, which had been driven into some lilac bushes about 10' high, knocking them over. The car was so deep in the shrubbery that a tow-truck had to pull it out sideways in order to extricate it. Defendant had apparently come for his wife, a domestic in the Williams home.
Williams, admittedly quite angry, asked defendant what he was doing there, but "not being able to get much of an answer," continued on to the house. Defendant got out of his car and followed him, "staggering all over the lawn." Williams upbraided him, telling him he was drunk and had no right to drive. Defendant denied he was intoxicated and became very abusive. There was an altercation and Williams struck defendant "in defense," and the latter *509 fell to the ground. Williams then called the police, and when a state trooper arrived soon after, told him what had happened. The trooper took defendant away. Williams testified that defendant "certainly smelled of liquor" and that, from his observation of him as he walked and his manner of speech, there was no question that defendant was under the influence of intoxicating liquor.
The trooper testified that when he drove into the Williams property he noticed the damaged fence, an 8"-10" pin oak tree practically over on its side, and the automobile buried full length in some shrubbery and lilac bushes. He found defendant standing on the patio at the rear of the house. Williams came out and explained to the trooper what he had found. There were constant interruptions from defendant. After attempting to quiet him down, the trooper was finally obliged to put him in the police car. The officer then advised Williams he could sign two complaints  one for trespassing under the Disorderly Persons Act, N.J.S.A. 2A:169-1 et seq. (Williams had told him he had previously informed defendant he was not to come to pick up his wife after work), and the other for using loud and abusive language. The trooper said he had full opportunity to observe defendant at the time of the arrest; he smelled of alcohol and was "definitely" intoxicated. He further testified that defendant admitted he had driven to the Williams residence for the purpose of picking up his wife to take her home. Defendant was not aware of the fact that he had been involved in an accident or that his car was buried in the lilac bushes.
The trooper took defendant to the State Police Barracks at Clinton. He admitted that defendant had not been given a drunkometer test or any of the tests ordinarily given a person suspected of drunken driving (Romberg test, finger-to-nose, walking a straight line, etc.) Nor had he been examined by a physician. The trooper explained that he did not bother to give defendant any test because he "was unaware there was going to be a complaint signed for *510 drunken driving. * * * Had I known, he would have surely been given a test." On cross-examination he reaffirmed that in his opinion defendant was drunk at the time. No complaint was lodged until Williams did so two days later.
A prosecution for drunken driving is in the nature of a quasi-criminal proceeding and must be so conducted as to respect and safeguard the basic rights normally accorded one accused of a criminal offense. State v. McCarthy, 30 N.J. Super. 6, 9-10 (App. Div. 1954). The recognized test to be employed in determining a motion for acquittal at the close of the State's case is whether there is any legally competent evidence from which an inference of defendant's guilt can logically and legitimately be drawn. State v. Picciotti, 12 N.J. 205, 208-9 (1953).
Viewed in the light of these principles, we conclude that the trial judge correctly denied defendant's motion for dismissal. Defendant claims there was not sufficient evidence to warrant a conclusion that he had actually been driving the car. There is nothing to the argument. We have not only the physical circumstances already described, but defendant's admission to the trooper that he had come to pick up his wife. As for the contention that the evidence was insufficient to justify a conclusion of drunkenness, there is the testimony of both Williams and the trooper, stated in positive terms, that defendant smelled of alcohol, staggered, was abusive, and was definitely under the influence of intoxicating liquor. Their testimony as to defendant's condition was competent and admissible. State v. Pichadou, 34 N.J. Super. 177, 180-181 (App. Div. 1955); State v. Damoorgian, 53 N.J. Super. 108, 114-115 (Cty. Ct. 1958). Moreover, it was supported by additional circumstances sufficient to warrant the inference that defendant had driven while intoxicated, among them the fact that defendant had obviously run his car off the driveway, knocked down a fence and a tree, and come to rest deep in the lilac bushes.
*511 The State's proofs were sufficient to justify denial of defendant's motion, for they spelled out the essential elements of the offense to the degree required by law. Compare, as to proof of driving, State v. Witter, 33 N.J. Super. 1 (App. Div. 1954); State v. Baumgartner, 21 N.J. Super. 348 (App. Div. 1952); State v. Elliott, 13 N.J. Super. 432 (App. Div. 1951); State v. Damoorgian, above; State v. DeHart, 3 N.J. Misc. 71, 129 A. 427 (C.P. 1925); and, as to intoxication, the Pichadou and Damoorgian cases, above, and State v. Glynn, 20 N.J. Super. 20 (App. Div. 1952).
Defendant stresses the absence of any chemical or other test, or any examination by a physician, in arguing that the State failed to prove he was under the influence of intoxicating liquor at the time of his arrest. In support of this contention he relies heavily on State v. Brezina, 45 N.J. Super. 596 (Cty. Ct. 1957).
Although examination by a physician or tests to determine intoxication, or both, are usually given, there is, as we said in the Pichadou case, 34 N.J. Super., at page 181, no persuasive reason to hold that a state of intoxication of the degree contemplated by N.J.S.A. 39:4-50 cannot factually be established by lay evidence. We there held that the average witness of ordinary intelligence, although lacking special skill, knowledge and experience, but who has had the opportunity of observation, may testify whether a certain person was sober or intoxicated. In Damoorgian the state troopers who testified stated, without equivocation, that in their opinion defendant was under the influence of alcoholic liquor and unfit to operate a motor vehicle. The court said:
"* * * Whether a man is sober or intoxicated is a matter of common observation, not requiring any special knowledge or skill, and is habitually and properly inquired into of witnesses who have occasion to see him and whose means of judging correctly must be submitted to the trier of the facts. * * *" (53 N.J. Super., at page 114)
*512 And see State v. Greul, 59 N.J. Super. 34, 36-37 (Cty. Ct. 1959).
A word about State v. Brezina, regularly cited to us in drunken driving cases. That decision revolved principally around the results of a drunkometer test, the County Court judge holding they could not be used because the State had failed to prove that the chemicals employed were tested or even compounded to the proper percentage for use in the machine when defendant submitted to the test. The court then went on to consider the testimony of the police officers involved and concluded that the State had failed to establish defendant's guilt beyond a reasonable doubt. It found that the road on which defendant was traveling was apparently unfamiliar to him; there was no evidence that his car was weaving from side to side after it "took off," as one of the officers had stated; no clinical tests were given; defendant consented to take the drunkometer test by signing the consent form with a clear signature; there was no evidence that he staggered into headquarters or needed assistance in any way; he was polite in talking to the officers and cooperative; he answered all questions asked of him. The court emphasized defendant's denials of some of the officers' testimony.
Brezina is not blindly to be followed as a precedent. To each case its own facts; to each set of witnesses an individualized assessment of credibility by the trial court. There was a substantial element of credibility involved here, and the testimony, supported by the circumstances alluded to, were sufficient to survive a motion for dismissal at the close of the State's case.
Considering, now, all of the testimony, including defendant's, we find no reason for disturbing the judgment of conviction. Defendant's proofs were not so strong as to overcome or reduce the probative weight of the State's case to the point where a finding in his favor was necessary as a matter of law. He testified that he had left his home three miles away from the Williams farm to pick up his *513 wife and child. He explained that as he went up the driveway a dog suddenly came out from a bush; he applied his brakes, and his car slid into the lilac bushes. He denied hitting a fence "or nothing like that." There was no explanation for the knocking down of the fence and the tree before driving into the bushes.
It is argued that defendant's staggering and his incoherence were due to having been hit by Williams. The credibility of this, as well as the rest of defendant's testimony, was for the trial court to assess.
The judgment of conviction is affirmed.