67 N.J. Super. 21 (1961)
169 A.2d 860
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HOWARD INGRAM, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Passaic County Court, Law Division.
Decided March 22, 1961.
*24 Mr. Walter H. Jones (Mr. Frederick L. Bernstein, appearing), attorney for appellant.
Mr. David D. Furman, Attorney General of New Jersey (Mr. Matthew T. Rinaldo, Deputy Attorney General, appearing), attorney for respondent.
PASHMAN, J.C.C.
Defendant was convicted in the Municipal Court of the City of Clifton of operating a motor vehicle while under the influence of intoxicating liquor, in violation of N.J.S.A. 39:4-50. He has appealed to this court, which appeal has been heard de novo on the record. The hearing consisted solely of oral argument. R.R. 3:10-10(a).
The legal questions raised on this appeal are:
1. Were the arrest and detention of the defendant illegal by reason of being arrested without a warrant and the failure of the police officer to take him, without unnecessary delay, before the nearest available magistrate?
2. Was the offense committed within the territorial jurisdiction of the Municipal Court of the City of Clifton?
3. Should this court take into consideration, along with all other relevant evidence, the refusal of the defendant to submit to a drunkometer examination?
4. Did the court err in denying defendant's motion to dismiss the complaint at the end of the State's case because the State failed to sustain the burden of proving the defendant's guilt of the charge of operating a motor vehicle while under the influence of intoxicating liquor, beyond a reasonable doubt?

I.
The defendant urges that he was never brought before a magistrate upon his arrest, and that there was a non-compliance with R.R. 8:3-3(a) which provides in effect that "a person making an arrest without a warrant shall *25 take the arrested person, without unnecessary delay, before the nearest available magistrate and a complaint shall be filed forthwith and a warrant issued thereon"; and that by reason of such non-compliance the court was deprived of jurisdiction; thus there could be no valid conviction.
The defendant was apprehended in Clifton and taken to the Bloomfield State Police Station for an examination to be conducted to determine alcoholic influence. Certain "physical" tests were performed upon the defendant, but he refused to submit to a drunkometer test. He was then taken by the troopers to Clifton Police Headquarters where he was to undergo a medical examination, but a doctor was not available. An unsuccessful attempt was made to have a doctor in Passaic examine the defendant. There was no objection to this procedure on the part of the defendant. Upon return to Clifton, a summons was issued to the defendant and bail posted. This procedure took approximately two to three hours.
Apparently much of the time involved was spent attempting to have the defendant examined. No contention is made by the defendant that he was abused in any way. The circumstances clearly indicate that the detention was otherwise reasonable.
It is conceded that R.R. 8:3-3(a) superseded N.J.S.A. 39:5-25. Winberry v. Salisbury, 5 N.J. 240 (1950); State v. Nimmo, 11 N.J. Super. 606 (Cty. Ct. 1951); State v. Ahrens, 25 N.J. Super. 201 (App. Div. 1953); State v. Lee, 25 N.J. Super. 92 (Cty. Ct. 1953).
Ahrens, supra, is dispositive of defendant's contention. In that case, the facts as to arrest and delay are almost identical to those now before this court. There, similarly the defendant's contention was that the municipal court was without jurisdiction to hear and determine the matter. The Ahrens case makes it clear that R.R. 8:3-3(a) has no applicability in the case at bar. At the expense of brevity, the pertinent part of the court's opinion in the Ahrens case is here quoted:
*26 "Unquestionably, the municipal court has jurisdiction to hear matters concerning the violation of the motor vehicle and traffic laws occurring within the territorial jurisdiction of that court. N.J.S. 2A:8-21.
The practice and procedure in the municipal court is governed by the rules promulgated by the Supreme Court (Rule 8:1-1). Under these rules it is provided that `(a) In cases involving violations of statutes or ordinances relating to the operation or use of motor vehicles, hereinafter designated as "traffic offenses," the complaint and summons shall be in the form set out in Criminal Procedure Form No. 11, the "Uniform Traffic Ticket"' and it is further provided that `The Complaint form shall be used in traffic cases, whether the complaint is made by a police or peace officer, or by any other person.' (Rule 8:10-1.) Rule 8:1-3, `Definitions,' provides, inter alia
`"Offense" shall mean any violation of a statute or an ordinance within the jurisdiction of a court to which these rules apply, or with respect to which a magistrate is authorized by law to conduct a preliminary examination of the person accused of crime.'
Rule 8:3-2(b) provides:
`In the case of indictable offenses other than high misdemeanors and in instances of non-indictable offenses, if it appears from the complaint that there is probable cause to believe that an offense has been committed and that the defendant has committed it, if the defendant is a corporation a summons shall issue. If the defendant is an individual the magistrate may, in his discretion, issue either a summons or a warrant. * * *' (Emphasis ours)
Rule 8:3-2(b) provides that in matters other than indictable offenses a summons or warrant may issue in the discretion of the magistrate taking the complaint. Rule 8:3-3(a) and (b) provides that a warrant or summons shall be signed by the committing magistrate or tested in his name and signed by a person empowered by law to take complaints. * * *"
Continuing 25 N.J. Super., at page 208:
"We conclude that it is the intent of the rules governing procedure in the municipal court, that the magistrate or one authorized to take complaints may issue either a summons or warrant to bring before the magistrate one charged with a violation of R.S. 39:4-50. Rule 8:3-2(b) and Rule 8:3-3(a) and (b) supra. * * *"
At page 209 of 25 N.J. Super.:
"The matter of the form of process is, in our opinion, a procedural and not a substantive one and is governed by the provisions *27 of Rule 8:10-1 et seq., and supersedes the procedures set forth hereinabove under R.S. 39:5-25. Under the cases of Winberry v. Salisbury, supra, and In re Pfizer's Estate, supra, the procedure is clearly controlled by the rule-making power of the Supreme Court.
Under the circumstances prevailing here, the magistrate did not lose his jurisdiction to hear and determine the charges against the defendant."
See also City of Asbury Park v. Shure, 54 N.J. Super. 46, 52 (Cty. Ct. 1959) and cases therein cited, holding that a procedural infirmity which had in nowise deprived an accused of his opportunity to be heard on the merits of the sufficient charge presented, or prejudiced his substantial right, will not require a reversal by the appellate court.
However, going one step further, assuming that the procedural due process has not been complied with, the requirement may be waived by action of the defendant. State v. Simpkins, 8 N.J. Super. 194, 197 (App. Div. 1950); Asbury Park v. Shure, supra, 54 N.J. Super., at p. 52. In the case sub judice the defendant appeared before the magistrate on the date fixed for trial, was fully acquainted with the charge, and participated in the trial, and asserted the jurisdictional defect here raised to have the conviction set aside. The issue here raised as to the jurisdiction of the court was not raised before the municipal court until after the State had completed its case and after cross-examination of the State's witnesses. There is no evidence that the defendant was deprived of a substantial right or of his opportunity to be heard upon the merits of the charge. Any participation on the merits before a magistrate is equivalent to a waiver and a submission to the jurisdiction of that court. The defendant's objection came too late and he thus waived the alleged omission and cannot now complain. State v. Mangino, 17 N.J. Super. 587 (App. Div. 1952); State v. Baker, 102 N.J.L. 349 (E. & A. 1926); State v. Keller, 137 N.J.L. 637 (Sup. Ct. 1948); Tomicich v. Norton, 134 N.J.L. 411 (Sup. Ct. 1946). The foregoing cases support the proposition that the failure *28 to obtain a warrant prior to the arrest of a person suspected of driving "under the influence" is a procedural formality to acquire jurisdiction over the person which must be challenged at the outset of the hearing before the magistrate. This theory is further supported by R.R. 8:10-6(h), which provides that where a defendant is charged with a traffic offense he must object to the validity of "process" before the trial commences. Hence the failure to make a timely objection would operate as a waiver of such right. Also R.R. 3:10-10(b) states that the "appeal shall operate as a waiver of all defects in the record, including any defect in, or the absence of any process * * *." (Emphasis supplied.) State v. Bierilo, 38 N.J. Super. 581 (App. Div. 1956); State v. Menke, 25 N.J. 66 (1957); State v. Henry, 56 N.J. Super. 1 (App. Div. 1959).
This court must hold, in view of the law and the circumstances here presented, that the Municipal Court of Clifton was not deprived of its jurisdiction over the defendant by reason of the manner of his arrest.

II.
The defendant next urges that proof is lacking to indicate that the offense took place in Clifton and cites State v. Vreeland, 53 N.J. Super. 169 (App. Div. 1958), in support of his argument for dismissal of the complaint. It is to be observed in the Vreeland case that the officer had failed to insert in the complaint that the offense was committed in a specific municipality and the defendant based his appeal upon such lack. The rationale of that case is that in motor vehicle cases the complaint is part of the record for jurisdictional purposes. The complaint in this case specified "Clifton" as the "location" where the offense occurred. In the opinion of this court there was sufficient evidence that the offense was committed within the territorial limits of Clifton. Trooper Rathburn stated that he was proceeding on "patrol" on the Garden State Parkway northbound in Clifton and "approaching mile-post 155" when *29 he first saw the defendant's car. The defendant was taken into custody when his car stopped "heading south in the northbound lane."
This court can also take judicial notice of the fact that mile-post 155 is within the territorial limits of Clifton. The territorial extent, boundaries, and positions of municipalities are a proper subject of judicial notice. See State v. City of Wildwood, 83 N.J.L. 188, 192 (Sup. Ct. 1912); Rou v. Peer, 4 N.J. Misc. 867 (Sup. Ct. 1926), followed in Courter v. Peer, 4 N.J. Misc. 865 (Sup. Ct. 1926).
Furthermore, the fact that the offense occurred in Clifton is uncontroverted by the evidence.
Accordingly, the court must hold that the contention of the defendant is specious and that the municipal court of Clifton properly had jurisdiction of the matter.

III.
A further argument presented by the defendant is that the conviction should be set aside because the magistrate permitted the State to present evidence of the refusal of the defendant upon his apprehension to submit to a drunkometer examination.
This court is mindful of the holdings in State v. Dietz, 5 N.J. Super. 222, 225 (App. Div. 1949); State v. Hintenberger, 41 N.J. Super. 597, 604 (App. Div. 1956); and State v. Miller, 64 N.J. Super. 262 (App. Div. 1960), that "a defendant should not be required to contend with inadmissible evidence, where it appears that it may have a prejudicial effect." However, the situation here resolves itself into a question of whether the defendant's choice, given to him under the statute, not to take the drunkometer examination should be put into the proofs on behalf of the State.
The pertinent part of the statute relating to a drunkometer examination to be administered to a suspect of operating a motor vehicle while under the influence of intoxicating liquor, provides that no chemical analysis "may be made or taken unless expressly consented to, or requested by, the *30 defendant." N.J.S.A. 39:4-50.1. Clearly the defendant was well within his rights to refuse to take the examination. If the defendant consents to the taking of such a test, the results may be used as evidence for or against him; but the consent is a condition precedent. In the case sub judice the defendant at first agreed to take the drunkometer examination, but upon reflection thereafter reversed his position and refused to submit.
The rationale underlying the defendant's position is that:
1. When a statute prescribes that evidence is admissible upon the occurrence of a certain event, it is clear, by necessary implication, that if the stated event does not occur, the evidence cannot be deemed admissible.
2. If the choice not to take the test can be put in evidence and argued to the fact finder as evidence of guilt, then the statute places the accused person in a position where he must risk providing evidence for the prosecution by submitting to a test or he must certainly incriminate himself by refusing to take it.
As the defendant argues, "he has damned himself if he does take it or damned himself if he does not."
The State argues, on the other hand, by analogy, that the right of the trier of fact to draw an adverse inference upon the defendant's exercise of his right to refuse to take the stand, is pertinent to the problem here presented.
It is fundamental in our State that if a defendant in a criminal action does not testify after direct evidence is received of facts which tend to prove some element of the crime charged against him, and which facts, if untrue, he could by his own testimony disprove, the trier of the facts may draw an inference that the accused cannot truthfully deny those facts. State v. Corby, 28 N.J. 106 (1958); N.J.S. 2A:84A-17 (Rule 23(4)).
The applicability of a rule of criminal law to quasi-criminal prosecutions such as drunken driving cases, has also been recognized. State v. Baumgartner, 21 N.J. Super. 348 (App. Div. 1952); State v. Damoorgian, 53 N.J. Super. 108 (Cty. Ct. 1958).
*31 The defendant's argument that he should be acquitted because such evidence was permitted to be introduced at the trial in the municipal court is without merit. It must be remembered that while this proceeding is designated as an appeal, nevertheless it is a trial de novo upon the merits. In this particular case the innocence or guilt of the defendant is to be determined from the transcript of the testimony taken at the trial in the municipal court. R.R. 3:10-10(a). Accordingly, in so considering the evidence, this court does not rule as an appellate court whether there was error by reason of the admission of inadmissible evidence.
The innocence or guilt of the defendant must be determined only upon the legal evidence before it. Thus, the sole question here is whether such testimony of the defendant's refusal to take the drunkometer examination can be considered by this court.
Counsel have not cited nor has the court been able to find a case in New Jersey deciding this particular question. In other jurisdictions there are cases relating directly to the issue here involved; some held such evidence admissible while others held to the contrary. This court has accepted as the criteria in such a situation the cases of People v. Stratton, 286 App. Div. 323, 143 N.Y.S.2d 362 (App. Div. 1955); and Duckworth v. State, 309 P.2d 1103 (Okl. Crim. Ct. App. 1957). The Stratton case is most apropos here, and the court said (143 N.Y.S.2d, at p. 365):
"That this was damning evidence against the defendant, when practically the sole issue was his intoxication, cannot be denied. The question is whether it was competent for any purpose. We think not.

* * * * * * * *
"It (the Legislature) * * * has recognized a person's right to refuse the test. * * *.
* * * [T]he fact that a defendant did what he had an absolute right to do cannot be used to create any unfavorable inference against him. * * *"
*32 The holdings in the last above-cited cases are more in harmony with the general philosophy adopted in New Jersey to protect the rights of the defendant, an indication of which is found in Corby, supra, and N.J.S. 2A:84A-17. In addition the court must take cognizance of the intent of the Legislature in enacting N.J.S.A. 39:4-50.1 which conferred upon the accused the right to refuse to take the examination. In logic and fairness it follows, then, that it must have been within the contemplation of the Legislature in enacting this statute that such right should continue unabated throughout any proceedings relating to a charge of operating a motor vehicle while under the influence of intoxicating liquor. To hold otherwise would do violence to the expressed legislative intent.
In this day, when the automobile is no longer a luxury but is an essential part of daily life, the need of the privilege to operate a motor vehicle is a necessity. In determining the guilt of an accused with the resultant sanctions, the court must be guided by such rules as will insure that fundamental fairness that the exigencies require to afford every protection to the accused. The same basic rights and safeguards normally accorded one accused of a criminal offense must be likewise accorded in a prosecution for drunken driving. State v. Guerrido, 60 N.J. Super. 505, 510 (App. Div. 1960).
The situation in Guerrido, supra, is not analogous to the case now before this court. There Judge Goldmann noted that the absence of any chemical or other test, or any examination by a physician, in the proofs introduced by the State would not prevent a conviction inasmuch as a state of intoxication can be factually established by lay evidence.
Guided by these rules, the court must resolve this question in the negative  that such evidence is inadmissible. Hence, the court affirmatively states at this point that in reaching the ultimate determination of the innocence or guilt of the defendant in the case at bar, such evidence of *33 the refusal of the accused to take the drunkometer test was disregarded and only the legally admissible evidence as hereafter discussed was considered. State v. Miller, 64 N.J. Super. 262, 266 (App. Div. 1960); State v. Dietz, supra; State v. Hintenberger, supra.

IV.
The defendant next asserts that the municipal court should have granted the motion of the defendant for acquittal at the close of the State's case.
At the outset, it must be pointed out that the defendant and the State refer to this argument (and their reference in briefs) by stating that the municipal court "erred," and that the most the defendant is entitled to is a new trial. This court, in the proceeding now before it, is not concerned with the correctness or the erroneous conclusions of the lower court. This is not a case of an appellate court which may send this type of case back for a new trial. State v. Miller, supra. This court must try the issue of innocence or guilt based solely on the stenographic record. R.R. 3:10-10(a).
There is a difference in the language under R.R. 3:10-10(a) as it relates to the determination of an appeal by the County Court on a stenographic record taken in the municipal court, and one without such a record. As to the stenographic record the rule provides in part:
"In such cases the trial of the appeal shall be heard de novo on the record * * *,"
while as to a trial without such a record the rule provides:
"In all other cases in which no stenographic record * * * was made * * * the appeal shall operate as an application for a plenary trial de novo."
There are a number of cases holding that in proceedings before the County Court, either on a stenographic *34 record taken in the municipal court, or without, an appeal shall act as a trial de novo. Hence, the trial is one on the merits without considering whether the municipal court committed error or not. State v. Simkins, 8 N.J. Super. 194, 197 (App. Div. 1950); State v. Weiss, 21 N.J. Super. 507, 509 (App. Div. 1952); State v. Joas, 34 N.J. 179 (1961); State v. Emery, 27 N.J. 348, 356 (1958); State v. Menke, 25 N.J. 66, 69 (1957); State v. Dunn, 45 N.J. Super. 224 (App. Div. 1957).
In State v. Joas, supra, Justice Haneman considered and commented upon the nature of the proceedings in the County Court upon an appeal under R.R. 3:10-10 from a judgment in the municipal court:
"A County Court should not consider the testimony adduced before the magistrate where the appeal results in a plenary trial de novo for the purpose of determining whether a defendant is guilty of the offense with which he stands charged. State v. Weiss, 21 N.J. Super. 507 (App. Div. 1952); cf. R.R. 3:10-10(a); State v. Hanson, 59 N.J. Super. 434 (App. Div. 1960), certification denied 32 N.J. 351 (1960). The decision should be made entirely upon the testimony adduced at the trial before the County Court. State v. Dunn, 45 N.J. Super. 224 (App. Div. 1957); State v. Weiss, supra."
The court continued, 34 N.J., at page 189:
"Under N.J.S.A. 39:5-11 and R.R. 3:10-10, an appeal to the County Court from a conviction by a municipal court of any of the provisions of N.J.S.A. 39:1-1 et seq. results in a trial de novo before the county court. The trial de novo nullifies the proceedings before the municipal court, except the initiating proceedings of complaint and warrant. Burnell v. Atlantic County Court of Common Pleas, 3 N.J. Misc. 531 (Sup. Ct. 1925); State v. Henry, supra.
The judgment of such a trial de novo nullifies the judgment of the municipal court. State v. Baumgartner, supra; State v. Hunter, 12 N.J. Super. 128 (App. Div. 1951)."
State v. Emery, 27 N.J. 348 (1958), was an appeal to the County Court upon a stenographic record. The defendant raised on such appeal the propriety of introducing certain *35 evidence on the appeal. The court held, 27 N.J., at pp. 356-357:
"R.R. 3:10-10(a) provides that appeals to the County Court shall take the form of a trial de novo on the record where, as here, a transcript has been taken of the proceedings in the municipal court.

* * * * * * * *
Turning to the question of the conspiracy indictment as bearing upon defendant's innocence of the `drunken driving' charge, it is sufficient to say that no attempt was made at the County Court level to introduce such indictment into evidence. Furthermore aside from its not being part of the record compiled in the municipal court it was absolutely devoid of probative value." (Emphasis supplied)
The defendant argues that he is entitled to a judgment of acquittal at the close of the State's case. On such a motion the test to be employed is "whether there is any legally competent evidence from which an inference of defendant's guilt can logically and legitimately be drawn." State v. Guerrido, supra, 60 N.J. Super., at p. 510; State v. Picciotti, 12 N.J. 205, 209-10 (1953); State v. McCarthy, 30 N.J. Super. 6, 9-10 (App. Div. 1954).
At this posture of the case the proofs presented by the State should be received in their best light and the court should draw any logical and legitimate inferences from such proofs. Measuring the proofs now before this court by the test laid down in the above cited cases, the court is completely satisfied that the motion for an acquittal should be denied.
The prior questions considered being matters of law and having been disposed of, the court will now consider the legal evidence before it, to determine the innocence or guilt of the defendant.
Trooper Rathburn testified that his attention was focused upon the defendant's car by reason of its being driven in an erratic manner, especially when it crossed the medial strip on the Parkway. After a pedestrian stopped the defendant's car by applying the brake and shutting off the motor, the *36 trooper, upon coming up to the car, observed the defendant sitting behind the steering wheel "with his head down on his chest." The defendant was blinking his eyes and looked like he had just "woke up." "The driver of the car [defendant] had appeared to be asleep * * * and he got up like he was just coming out of his sleep." The defendant asked "what happened."
The defendant was then taken by the trooper to the State Police Station in Bloomfield where he was interrogated. Upon questioning, he did not know the time of day. Trooper Rathburn further testified that the defendant was swaying and that he detected an odor of alcohol emanating from the defendant. Another officer, Trooper Szot, was present and asked the defendant if he had been drinking, to which the defendant replied "I suppose so." He was asked where, and he said, "in a tavern I suppose." Trooper Rathburn testified that he had observed the defendant for two or three hours after his arrest, which formed the basis for his opinion that the defendant was under the influence of intoxicating liquor and "totally unfit" to drive an automobile. The trooper also testified that the defendant's clothing was neat, his demeanor polite, he was talkative, and he was not combative or hilarious.
Trooper Szot administered the preliminary physical part of the drunkometer examination at the Bloomfield Station. He described the actions of the defendant during the balance tests and concluded that of the six administered, "he had either swayed, staggered or moved his feet." He, too, detected an odor of alcohol on the defendant's breath.
The "Romberg" [finger to nose] test "was not fully successful" when defendant attempted it. This test was given after Trooper Szot had advised the defendant of his rights and he orally consented.
Based on all the tests given by Trooper Szot, his observations and the odor of alcohol, it was his opinion "that the defendant was under the influence of alcoholic beverages" and unfit to drive an automobile.
*37 There is testimony by the trooper that the defendant had stated during the tests that he was taking pills for a leg ailment.
The defendant did not take the stand at the trial in the municipal court.
A prosecution under N.J.S.A. 39:4-50, is a quasi-criminal proceeding. State v. Emery, supra; State v. Guerrido, supra. Therefore, the State has the burden of establishing the guilt of the defendant beyond a reasonable doubt. State v. Glynn, 20 N.J. Super. 20 (App. Div. 1952); State v. Matchok, 14 N.J. Super. 359 (App. Div. 1951).
There is substantial evidence before the court that clearly indicates that the defendant was under the influence of intoxicating liquor and unfit to operate a motor vehicle. The manner in which he operated his automobile, his actions and his conversation at the time of his arrest, the results of the physical tests administered by the trooper, the defendant's admission that he had been drinking, the opinion of the state troopers, the defendant's failure to take the stand and testify on his own behalf, and the right of the court as trier of the facts to draw an inference that he could not truthfully deny the incriminatory facts established by the State, comprise formidable proof of defendant's guilt.
While no evidence was presented by the State of an examination by a physician or other scientific tests given, other than those recited above, nevertheless it is well established in this State that a defendant may be convicted of driving while "under the influence" without any examination or test by a physician or expert, and that the state of intoxication required by the statute may be established by lay evidence. State v. Pichadou, 34 N.J. Super. 177 (App. Div. 1955); State v. Greul, 59 N.J. Super. 34 (Cty. Ct. 1959); State v. Guerrido, supra, 60 N.J. Super., at p. 510.
The court is convinced beyond a reasonable doubt that the evidence clearly supports the charge that the defendant *38 was operating a motor vehicle while under the influence of intoxicating liquor. Accordingly, I find the defendant guilty as charged. He will pay a fine of $200, plus $5 costs assessed in the Municipal Court of Clifton and $20 costs in this court, and his driving privileges will be suspended for a period of two years.