## PETER CASTNER v. SAMUEL SLIKER.

1. When an affray or personal combat occurred in a public tavern, and both parties had been drinking, a witness who came to the place with defendant may be asked what was said at the time by another person who was present, and who also came with the witness, while the combat was in progress, and also what was said by other persons who were present. It is part of the *res gestæ*, connected with the original act, and calculated to throw light on the transaction, and aid the jury in forming a correct judgment upon the facts of the case.

2. It was lawful to inquire of the witness whether Sliker, one of the parties, was sober or otherwise, without making it appear that the witness was an expert in judging of intoxication, or that he had any particular knowledge of Sliker's habits or conduct.

3. A physician may be examined as to injuries done to the eyes of a party by violence, although he may not be a surgeon or an oculist.

4. Acts and declarations of the plaintiff occurring more than two or three months before the affray, and on several occasions, are not admissible as evidence to show the intention of wanton violence at the time of the conflict.

5. When the charge of the court is such as amounts to an expression of opinion upon the weight of evidence, it is not error.

Error to the Circuit Court of the county of Warren.

This was an action of trespass for assault and battery. The jury, on the trial of the issues, rendered a verdict for the plaintiff. Exceptions were taken to the opinion of the court upon several points, and the case was brought into this court by writ of error.

The matters excepted to and assigned for error are set out *seriatim* in the opinion of the court, and need not be otherwise referred to.

Argued before the CHIEF JUSTICE, and Justices ELMER, VREDENBURGH and WOODHULL.

For the plaintiff in error, *J. G. Shipman* and *J. Vanatta.*

For the defendant, *J. M. Robeson* and *T. Runyon.*

The opinion of the court was delivered by

ELMER, J. The action was trespass for an assault and battery, and the defendant below having, besides the general issue, pleaded *son assault demesne*, the plaintiff replied that the defendant was guilty of excess, and upon this last issue the case was mainly defended. Bills of exception having been taken to several rulings of the court, errors were assigned upon them and have been insisted on in argument, making it proper to notice them in their order.

*First.* It was insisted that the judge erred in permitting a witness to be asked, when detailing the particulars of the fight, what did Coleman say ? It appeared that the affray

occurred in the room of a tavern, where both parties had been drinking, and where the witness as well as Coleman, who came to the place in company with the defendant, were present, and where of course there was much confusion and tumult. It is too plain, I think, to admit of reasonable doubt, that under the circumstances in which all the witnesses of the combat were placed, what any of them said or did, while it was in progress, was a part of the *res gestœ*, and was calculated to throw light on, and aid the jury in forming a correct judgment of the facts of the case. Coleman's declarations were not a narrative of past occurrences, but were concomitant with the principal act, and so connected with it, as to be regarded as the mere result and consequence of the co-existing motives. It appeared that he was taking some part in the affray, by calling to the person who attempted to interfere, to let him alone, let him halloo enough. 1 *Greenl. Ev.*, §§ 108, 110.

*Secondly.* It was objected that a witness was permitted to be asked, how did Sliker appear, sober or otherwise? The ground of this objection was that it did not appear that the witness was an expert in the matter of intoxication, or that he had had any such previous knowledge of Sliker's habits and conduct as enabled him to judge. Whether a man is sober or intoxicated is matter of common observation, not requiring any special knowledge or skill, and is habitually and properly asked of witnesses who have occasion to see him, and whose means of judging correctly must be submitted to the jury.

*Thirdly.* Dr. Howard S————, the physician called upon to prescribe for the defendant, who examined his eyes, and described the injuries they had received, by which the plaintiff was rendered permanently blind, was asked, how could such injury be produced? to which he answered, "by gouging." This question was objected to, on the ground that it did not appear that the witness was a surgeon, or was an oculist, and that he was not such an expert as was competent to answer such a question. Who is entitled to be considered as

an expert in regard to any question of science or skill, cannot be determined by any precise rule, but from the nature of the case, must be left very much to the discretion of the judge. That this discretion was exercised wisely, and in accordance with the usual practice, in permitting a regular physician, attending a patient, to express his opinion in regard to the nature of a disease or wound, which he treated professionally, I see no reason to doubt.

*Fourthly.* The defendant offered to prove, that two or three different persons in the course of two years, and within two months of this occurrence, told the defendant that he must take care of the plaintiff, and that the plaintiff threatened to whip him, and that he could kill him in two minutes; that defendant had, on several occasions, left places to avoid a meeting with plaintiff; that defendant expected to show further, that plaintiff had declared to several persons that he could whip defendant with a hand tied behind his back, and could kill the rascal; that he first used these threats three or four years ago, and that he had repeated them until within two or three months of this occurrence; and would further prove that plaintiff was a fighting man of great powers, that people were afraid of him, and that in consequence of the defendant's being afraid of him he did not want to fight. This evidence, thus offered, was objected to, and being overruled by the court as incompetent and irrelevant, the defendant excepted to this decision.

It was insisted, on the argument, that this evidence was proper and relevant, to show that the defendant was entitled to use more force and violence than would otherwise have been allowable, and in mitigation of damages. In my opinion it was not competent or relevant for either of these purposes. What third parties had said, with whose declarations it was not alleged the plaintiff had any connection, was simply hearsay, entitled to no influence. The plaintiff's own acts and declarations were not stated to have occurred more recently than within two or three months of the affray in which the plaintiff was injured. Such acts and declarations

could only be admitted, where they had been so recent as to afford a presumption that the defendant acted at the time under the heat of passion wrongfully excited, and which had not passed away. 2 *Greenl. Ev.*, § 93, *note and cases.*

Upon the issue formed by the replication, it was assumed that the plaintiff was the aggressor in commencing the conflict, and the question submitted to the jury was, whether the defendant used more force and violence than was necessary for his defence. It must be presumed that the court properly instructed the jury on this subject. He had undoubtedly a right to use blows or other force, so far as they were necessary for his protection, but not for the gratification of malice or revenge. The previous threats, or the character of the plaintiff, could not authorize him to do more than defend himself.

*Lastly.* It was objected that the judge charged the jury, that if they believed the loss of the plaintiff's eyesight was the result of an intentional act on the part of the defendant, he could not perceive how they could hesitate to find in favor of the plaintiff; and that this took from them the decision of one of the questions at issue, namely, whether, under the circumstances, the defendant was not justified in putting out the plaintiff's eyes. In my opinion this is not the fair interpretation of the charge. The judge went on to remark, "that to take away the sight of an adversary, could only be justified by imminent danger of great bodily harm ; it is difficult to imagine how, under any of the ordinary conditions of a private combat, such extreme violence could be justified." From this, as well as from other parts of the charge, as contained in the bill of exceptions, the most that can be said as to this part of the charge is, that it amounted to an expression of his opinion upon the weight of the evidence, which it is well settled is not error.

In my opinion the judgment must be affirmed.

Judgment affirmed.