94 N.J. Super. 14 (1967)
226 A.2d 728
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
EDWARD SWIDERSKI, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 23, 1967.
Reconsidered February 6, 1967.
Decided February 9, 1967.
*16 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Thomas L. Yaccarino, Assistant Prosecutor, argued the cause for appellant (Mr. Vincent P. Keuper, Prosecutor, attorney).
Mr. Norman Robbins argued the cause for respondent (Mr. Edmund Vitale, Jr. joined on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Pursuant to leave granted, the State appeals from a County Court order suppressing evidence of the results of a Breatholizer test in a drunken driving case then pending in the Middletown Township Municipal Court. In entertaining defendant's motion to suppress, the county judge purported to exercise jurisdiction on the authority of R.R. 3:2A-6(a).
*17 The Middletown Township police took defendant into custody after receiving a report from the Raritan Township police that they had noticed his car weaving back and forth on the highway and passing across the center line into the opposite lanes. Defendant was taken to the township police station for driving while under the influence of intoxicating liquor, in violation of N.J.S.A. 39:4-50, and there given a Breatholizer test which showed a positive finding of alcohol. He was then formally charged with drunken driving.
Prior to a hearing before the municipal magistrate, defendant filed a motion in the County Court pursuant to R.R. 3:2A-6(a) to suppress the results of the test. The prosecution moved to dismiss, claiming that the County Court was without jurisdiction because no illegal search and seizure was involved. The county judge denied the motion and ordered that testimony be adduced, specifically with regard to the question of consent. The prosecution was not at the moment prepared to present witnesses; however, following a luncheon recess it elected to proceed with the only one of four possible witnesses it had available  a police officer who had been present at the time the Breatholizer test was given.
Under the circumstances, the hearing proved to be a very brief one, and somewhat unsatisfactory. Defendant testified that he was stopped on the road and brought into police headquarters where he told the officer he had had a few beers  about three small bottles. When shown the Breatholizer apparatus and asked if he had ever seen one like it before, his reply was that he had not and that he wanted his own doctor or any doctor to examine him because he had been taking insulin for a diabetic condition. The officer told him that if he had had only a few beers there was nothing to worry about, and to blow his breath into the Breatholizer. Although still asking for his doctor, defendant breathed into the machine.
The officer testified that the patrolman who gave the test advised defendant how the Breatholizer would operate and asked if he would give his consent. At first defendant said *18 the test was not necessary. Then he said, "I only had four or five beers. It [the test] won't hurt anyhow." The officer also testified that at one point defendant had asked for his doctor.
The trial judge concluded that defendant had not consented to the test, as required by L. 1951, c. 23, § 30 (N.J.S.A. 39:4-50.1), the statute applicable at the time of the arrest. That section has since been amended by L. 1966, c. 142, § 2 (N.J.S.A. 39:4-50.2), subsection (e) of which provides that no chemical test "may be made or taken forcibly and against physical resistance thereto by the defendant."
R.R. 3:2A-6(a), under which the county judge purported to act, provides that
"* * * a person claiming to be aggrieved by an unlawful search and seizure, and having reasonable grounds to believe that the evidence obtained may be used against him in a penal proceeding, may apply only to the Superior Court or County Court for the county in which the evidence was obtained for the return of property seized and to suppress the evidence obtained, even though the offense charged or to be charged may be within the jurisdiction of a municipal court. * * *" (Italics ours)
We were initially of the opinion that the County Court was without jurisdiction, but upon reconsideration of the matter have determined that such a conclusion was erroneous. Our error came about because we read the quoted rule in light of the definition section, R.R. 3:1-3, of Part III, "Rules Governing Criminal Practice in the Superior Courts and County Courts," which defines "offense" as "an indictable offense." Since a violation of N.J.S.A. 39:4-50, the drunken driving statute, is not an indictable offense, but one that may be heard by a municipal magistrate  see N.J.S. 2A:8-21  we reasoned that the County Court did not have jurisdiction.
The definition of "offense" was included in the original rules adopted by the Supreme Court, effective September 15, 1948, as part of Rule 2:1-3. R.R. 3:2A-6 was adopted December *19 6, 1962, effective January 2, 1963, some 14 years later. It was based upon Federal Rule of Criminal Procedure 41(e). Proceedings of the Fourteenth Annual Judicial Conference (May 4, 1962) (Report of the Supreme Court's Committee on Criminal Procedure, Morning Session, pages 5-6); and see State v. Ferrara, 92 N.J. Super. 549, 550-1 (Cty. Ct. 1966). The purpose of the rule, as explained by Judge Gaulkin, committee chairman, was to make sure that in every case involving a criminal violation a person claiming to be aggrieved by an unlawful search and seizure could move  within 30 days after his initial plea to the charge, unless for good cause the court enlarged the time, and before trial  to obtain the return of the property seized and to suppress the evidence obtained. However, such motion could be brought only in the County Court or Superior Court for the county in which the evidence was obtained.
It is evident that those who drafted the rule inadvertently overlooked the definition of "offense" in R.R. 3:1-3 when they used that word in R.R. 3:2A-6(a). The rule itself indicates that it applies to any kind of an offense, whether indictable or not. The person claimed to be aggrieved by an unlawful search and seizure can move to suppress in the County or Superior Court even though the offense charged or to be charged might be within the jurisdiction of the municipal court  a jurisdiction which in the overwhelming number of cases is concerned with nonindictable offenses. Further, the rule refers to evidence that may be moved against the movant in "any penal proceeding."
We hold, therefore, that R.R. 3:2A-6(a) is available to any person claiming to be aggrieved by an unlawful search and seizure, whether the charge brought against him relates to an indictable or nonindictable offense. That has been the practical interpretation given the rule since its promulgation in 1962. See Summary of Administrative Directives, Part III, Directive No. 7, p. 31: "Motions to Suppress Evidence; Rule 3:2A-6" (Office of the Administrative Director of the Courts, April 1965).
*20 The issue, then, is whether defendant properly invoked the jurisdiction of the County Court under R.R. 3:2A-6 (a). His counsel concedes that "there is no constitutional question of unlawful or unreasonable search and seizure." (Italics ours). He bases his argument solely on the statutory requirement of N.J.S.A. 39:4-50.1 before its amendment in 1966. The argument made is that although the Breatholizer test did not violate federal constitutional provisions, it did violate state law and therefore constituted an unlawful search and seizure.
The State does not squarely meet this argument. Noting that defendant did not assert that his arrest was not based upon probable cause, or that the Breatholizer test was not incidental to the arrest, it reasons that the only issue is whether the statutory consent was obtained  a simple question of fact which could readily be determined by the municipal magistrate. Most of the State's brief is devoted to a discussion of the proposition that the Breatholizer test falls outside the protection against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution, citing in support State v. King, 44 N.J. 346, 357 (1965); State v. Blair, 45 N.J. 43 (1965); Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957), and Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).
In King our Supreme Court noted that the overwhelming majority view is that the scope of the privilege against self-incrimination is limited to what Professor Wigmore characterized as "testimonial compulsion," 8 Wigmore, Evidence (McNaughton rev. 1961), § 2263, p. 378. As examples of types of examination or inspection outside the scope of the privilege because nontestimonial in character, the court cited "fingerprinting, photographing, examination of the body of a person for identifying characteristics, drunkometer tests and blood tests," all of which might be compelled since to do so would not require the witness to disclose any knowledge *21 he might have. The court did not there deal with the consent requirement of N.J.S.A. 39:4-50.1.
The sole issue in State v. Blair was whether the trial judge had correctly ruled that the State had the burden of affirmatively proving that before the blood specimen was taken, defendant, who stood charged with drunken driving and reckless driving, was advised of his constitutional rights, i.e., the privilege against self-incrimination. The court held that the taking of a blood sample is not covered by the privilege, and so a defendant need not be informed that because the results might be used against him, he could refuse to consent to the test. The court noted that N.J.S.A. 39:4-50.1 required that defendant give his express consent before a blood specimen could be taken, and observed that "This requirement is apart from the issue here on appeal and must be met."
Breithaupt v. Abram involved the taking of a blood sample where there was ample justification for the police officer's conclusion that the driver was under the influence of alcohol. The sample was taken by a physician in a medically acceptable manner and in a hospital environment. The driver was unconscious at the time the blood was withdrawn. The United States Supreme Court held that under the circumstances the taking of the sample did not offend the "sense of justice" of which it spoke in Rochin v. People of California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396 (1952). It summarily rejected Breithaupt's argument that the withdrawal of blood and the admission in evidence of the analysis report violated the Fifth Amendment privilege against self-incrimination, citing Twining v. State of New Jersey, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97 (1908). Breithaupt had also contended that the chemical analysis should be excluded because it was the product of an unlawful search and seizure, violative of the Fourth and Fourteenth Amendments to the United States Constitution. The court rejected that claim on the basis of Wolf v. People of State *22 of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949).
Twining had held that the protection of the Fourteenth Amendment did not embrace the Fifth Amendment privilege. However, that holding was supplanted by Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), where the court ruled that the Fourteenth Amendment secured against state invasion the same privilege that the Fifth Amendment guaranteed against federal infringement  the right against self-incrimination. And Wolf v. People of State of Colorado had been overruled by Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933 (1961), where the court held that the exclusionary rule adopted for federal prosecutions must also be applied in criminal prosecutions in state courts. In view of Malloy and Mapp, the United States Supreme Court reconsidered the Breithaupt holdings in Schmerber v. State of California, above.
Schmerber had been convicted in municipal court of driving an automobile while under the influence of intoxicating liquor. The car had been in an accident, and defendant was taken to a hospital for treatment of his injuries. He was arrested there, and a sample of his blood taken by a physician at the direction of a police officer. Chemical analysis of that sample indicated intoxication. A report of the analysis was admitted in evidence at the trial over defendant's objection that the blood sample had been taken despite his refusal, on the advice of counsel, to consent to the test. Among other things, he contended that the withdrawal of the blood and the admission of the analysis in evidence violated his constitutional right against self-incrimination under the Fifth Amendment and his right not to be subjected to an unreasonable search and seizure in violation of the Fourth Amendment.
Mr. Justice Brennan, writing for the majority, held that the privilege against self-incrimination protects an accused only "from being compelled to testify against himself, or *23 otherwise provide the State with evidence of a testimonial or communicative nature," so that the withdrawal of the blood and use of the analysis did not involve compulsion to these ends. Accordingly, the blood test evidence was not inadmissible because of the privilege against self-incrimination.
Justice Brennan then considered whether the chemical analysis should have been excluded from evidence as the product of an unconstitutional search and seizure. The overriding function of the Fourth Amendment, he said, was "to protect personal privacy and dignity against unwarranted intrusion by the State." He then went on to say:
"The values protected by the Fourth Amendment thus substantially overlap those the Fifth Amendment helps to protect. History and precedent have required that we today reject the claim that the Self-Incrimination Clause of the Fifth Amendment requires the human body in all circumstances to be held inviolate against state expeditions seeking evidence of crime. But if compulsory administration of a blood test does not implicate the Fifth Amendment, it plainly involves the broadly conceived reach of a search and seizure under the Fourth Amendment. That Amendment expressly provides that `[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *.' (Emphasis added.) It could not reasonably be argued, and indeed respondents do not argue, that the administration of the blood test in this case was free of the constraints of the Fourth Amendment. Such testing procedures plainly constitute searches of `persons,' and depend antecedently upon seizures of `persons,' within the meaning of that Amendment."
The issue to be resolved, therefore, was whether the police were justified in requiring Schmerber to submit to a blood test, and whether the means and procedures employed were such as to respect the relevant Fourth Amendment standards of reasonableness.
Although the facts established probable cause to arrest Schmerber and also suggested the required relevance and likely success of a test for alcohol, the question remaining for determination, said the court, was whether the arresting officer could draw those inferences himself or first had to procure a warrant before proceeding with the test. The court observed *24 that the officer might reasonably have believed that he was confronted with an emergency, where the delay necessary to obtain a warrant would, under the circumstances, threaten the destruction of evidence  i.e., a diminution in the percentage of alcohol in the blood, which begins shortly after drinking stops. There being no time to seek out a magistrate and secure a warrant because of the lapse of time in taking Schmerber to a hospital and investigating the scene of the accident, the court concluded that under the special facts of the case the taking of the blood sample was a proper incident to the arrest. Further, the court was satisfied that the test chosen was a reasonable one, and that it was performed in a reasonable manner, by a physician in a hospital environment. Accordingly, the majority concluded that in the circumstances there was no violation of the right against unreasonable search and seizure under the Fourth and Fourteenth Amendments.
In light of what was said in Schmerber, quoted above, the Breatholizer test given in this case plainly constituted a "search" of defendant's person and, antecedently, depended upon a "seizure" of his person. Was there, then, a lawful search and seizure?
As we have noted, defendant concedes that the constitutional standard of reasonableness was not offended, but argues that the test could not lawfully have been administered unless he first gave his consent, as required by the statute.
Before amending N.J.S.A. 39:4-50.1 in 1966, the Legislature expressly required consent as a condition precedent to any chemical test or analysis for drunkenness. This being so, the determination of whether the test given defendant amounted to an "unlawful" search and seizure had to be resolved by determining whether he had not given his consent thereto. R.R. 3:2A-6(a) assigns to the Superior Court or County Court of the county the responsibility of making such a determination, based upon evidence adduced at a full hearing.
The burden of proof of establishing consent is, of course, upon the State. The trial judge was of the opinion *25 that the State had failed to meet that burden. The State could have asked for a continuance in order to produce other witnesses present at the test, including the officer who gave it. However, it chose to proceed with only one witness, and his testimony was not sufficient to convince the trial judge that defendant had consented to the test.
We conclude that the County Court had jurisdiction to hear and determine defendant's motion to suppress. Its determination that he did not consent to the test is affirmed.
The charge of drunken driving will now be prosecuted in the municipal court, where the parties will produce all available testimony concerning defendant's alleged intoxicated condition, except for the results of the Breatholizer test.