**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5317-17T4

PETER W. SLOMKOWSKI
and DANA SLOMKOWSKI,

     Plaintiffs-Appellants,

v.

NEW JERSEY MANUFACTURERS
INSURANCE COMPANY,

     Defendant-Respondent.

_____

Submitted September 16, 2019 – Decided January 24, 2020

Before Judges Messano, Vernoia and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-3166-15.

Maggs & MC Dermott, attorneys for appellants (James A. Maggs, Michael M. Di Cicco and Tara Marie Parente, on the briefs).

Leyden Capotorto Ritacco Corrigan & Sheehy, attorneys for respondent (Kevin F. Sheehy, on the brief).

PER CURIAM

Plaintiffs, Peter W. Slomkowski and Dana Slomkowski, appeal from a no-cause jury verdict arising from a March 2012 rear-end motor vehicle accident involving an underinsured motorist. The key disputed issue at trial was whether Mr. Slomkowski suffered permanent injury as a proximate result of the accident. Plaintiffs contend that the trial judge made several incorrect evidentiary rulings and improperly precluded plaintiffs from telling the jury in summation that the defense had elected not to call the expert medical witness they retained to examine plaintiff. We affirm the jury verdict substantially for the reasons set forth in the trial judge's written opinion denying plaintiffs' motion for a new trial. After reviewing the record, we conclude the plaintiffs' contentions, viewed individually and cumulatively, do not warrant overturning the jury verdict.

I.

Defendant, New Jersey Manufacturers Insurance Co., retained a medical expert, Dr. Richard Sacks, to perform an independent medical examination of Mr. Slomkowski. Dr. Sacks prepared a report where he opined that the March 2012 accident caused a permanent injury. In light of the unfavorable opinion, the defense chose not to call Dr. Sacks as a trial witness. Defendant also filed a motion in limine to prohibit plaintiffs from advising the jury that it was the defense that had retained Dr. Sacks to examine Mr. Slomkowski. Defendant did

not object to the jury being told that the defense did not present an expert to counter plaintiffs' expert. Nor did defendant object to having Dr. Sacks appear at trial as a witness on behalf of plaintiffs. All the motion in limine sought was to keep from the jury that Dr. Sacks had been retained by the defense to conduct an independent medical examination. The trial judge granted defendant's motion. Plaintiffs contend on this appeal that they should have been permitted to advise the jury that the defense retained Dr. Sacks.

New Jersey law affords attorneys "broad latitude in summation[s]." Bender v. Adelson, 187 N.J. 411, 431 (2006) (quoting Colucci v. Oppenheim, 326 N.J. Super 166, 177 (App. Div. 1999)). Counsel may even draw conclusions that cause the jury to make inferences that are "improbable, perhaps illogical, erroneous or even absurd." Ibid. (quoting Colucci, 326 N.J. Super at 177). However, summation commentary must be based on truth and counsel cannot "misstate the evidence[,] . . . distort the factual picture," nor draw an inference without evidentiary support. Ibid. (quoting Colucci, 326 N.J. Super. at 177); see also Colucci, 326 N.J. Super at 177 (finding that summation "comments must be confined to the facts shown or reasonably suggested by the evidence introduced during the course of the trial" (citing Condella v. Cumberland Farms, Inc., 298 N.J. Super. 531, 534 (Law Div. 1996))). With respect to limitations

on the inferences that may be argued by counsel during summation, trial courts are given the discretion to conduct a case-specific analysis to determine whether a failure to call a witness raises no inference or an unfavorable one, and "whether any reference in the summation or a charge is warranted."  State v. Clawans, 38 N.J. 162, 172 (1962).

In the present case, plaintiffs' counsel wished to inform the jury not only that his expert testimony was unrebutted, but also that the defense had its own expert, Dr. Sacks, examine Mr. Slomkowski and chose not to have him testify. The practical effect of such an argument would convey to the jury both that the non-testifying expert's opinion would have been adverse to defendant's case and also that the defense was seeking to conceal Dr. Sack's opinion from them.

We agree with the trial court that it would have been inappropriate to allow plaintiffs' counsel to argue in summation that the defense had retained Dr. Sacks.  The trial court's ruling is consonant with the principles explained in Washington v. Perez, which addressed when an adverse inference jury instruction is warranted in a case where "a party declines to present the testimony of expert witnesses whose opinions have been disclosed in accordance with the discovery rules."  219 N.J. 338, 342 (2014).  It bears emphasis that Dr. Sacks was not in the exclusive control of defense counsel.  To the contrary, as

was made clear during argument on the motion in limine, plaintiffs were free to subpoena Dr. Sacks to present his testimony at trial, just as plaintiffs' counsel was free to point out that the defense did not call an expert to refute the plaintiffs' expert's opinion. The trial court acted well within its discretion when it precluded plaintiffs' counsel from going one step further by telling the jury in essence that the defense had chosen to withhold unfavorable evidence from them.

II.

Plaintiffs contend that the jury should not have been shown four photographs that depicted the rear bumper of their car following the accident. The exact circumstances of the admission and publication of these photographs are somewhat unclear. The trial court ruled that the photographs had been properly authenticated and could be shown to the jury on a display board. However, the court later determined that the photographs could not go into the jury room, commenting that they could be misleading.

We begin our analysis by noting that when reviewing evidentiary rulings made by the trial court, we apply an "abuse of discretion" standard. State v. Nantambu, 221 N.J. 390, 402 (2015) (quoting State v. Harris, 209 N.J. 431, 439 (2012)). An appellate court will reverse an evidentiary ruling only if it "was so

5

wide off the mark that a manifest denial of justice resulted." Griffin v. City of East Orange, 225 N.J. 400, 413 (2016) (quoting Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)).

N.J.R.E. 901 states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter is what its proponent claims." As pointed out by the court in Kalola v. Eisenberg,

> [N.J.R.E.] 901 "does not erect a particularly high hurdle." The proponent of the evidence is not required "to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be."
>
> . . . .
>
> The requirement under [N.J.R.E.] 901 is satisfied if sufficient proof has been introduced so that a reasonable juror could find that the matter in question is what its proponent claims.
>
> [344 N.J. Super. 198, 205–06 (Law Div. 2001) (internal citations omitted).]

Accordingly, all that is needed to admit photographs is witness testimony that the photograph is a fair and accurate depiction of what the exhibit purports to show. See Brenman v. Demello, 191 N.J. 18, 21 (2007) ("The admissibility of any relevant photograph rests on whether the photograph fairly and accurately

6

depicts what it purports to represent . . . ."); State v. Joseph, 426 N.J. Super. 204, 220 (App. Div. 2012) ("The authentication of photographic evidence requires a witness to verify that it accurately reflects its subject, and to identify or state what the photograph shows." (citing State v. Wilson, 135 N.J. 4, 14 (1994))); Macaluso v. Pleskin, 329 N.J. Super. 346, 356 (App. Div. 2000) (holding that computerized images of x-rays were authenticated by testimony from the treating physician that the images "were a fair and accurate depiction of the x-rays he had taken").

In the present case, Mr. Slomkowski, during cross-examination, was shown the same four photographs of his vehicle that had been shown to him during his deposition. During the deposition, he identified the car in the photographs as his and was able to identify a crack in the center of the bumper that the accident caused. At trial, he first testified on cross-examination that the photographs did not depict the way his vehicle appeared after the accident. He testified that there was additional damage to the underside of the bumper that was not visible in the photographs. However, he eventually acknowledged on cross-examination that the photographs did accurately depict the way his vehicle looked following the accident, even as he maintained that the photographs did not present the best angle to show the extent of the damage sustained during the

accident.  Based on his testimony that the photographs accurately depicted the way his vehicle appeared following the accident, the trial court found that the requirements for authentication and admissibility were met.

Later, the court decided to prohibit the photographs from going into the jury room, but in a sidebar before jury instructions, the judge was clear that the photographs were evidence the jury could consider.  The judge did not instruct the jury to disregard the photographs, but rather gave the standard "photographic evidence" model jury charge. Those instructions explain how the jury might consider photographs that purport to show the extent of vehicle damage so that it can determine whether the motor vehicle accident involved sufficient force to cause Mr. Slomkowski to sustain a permanent injury.[1]

We conclude from these circumstances that the judge did not reverse his initial ruling as to the admissibility of the photographs.  Nor was there need to do so.  The photographs were properly authenticated as required under N.J.R.E. 901.  Mr. Slomkowski's testimony on cross-examination suggesting that there were other angles to show the full extent of damage to the car does not mean

---

[1]  Model Jury Charges (Civil), 5.34, "Property Damage in Motor Vehicle Accidents" (approved 10/2009; rev. 01/2019).  This court gave this charge prior to its 2019 update, which changed the name of the charge and revised the charge to include instances where a party alleges vehicle damage, but there is no photographic evidence of damage.

that the photographs in question should not have been admitted. Nothing in the record suggests, for example, that the photographs had been altered or distorted.

A photograph may fairly depict what it purports to depict, and thus be authenticated and admitted into evidence, notwithstanding that other photographs may provide additional perspectives and thereby present a more complete understanding of the condition of the item depicted. In our adversarial trial system, advocates on both sides are permitted to introduce evidence favorable to their case, and photographs proposed as evidence by one party are not inadmissible simply because the opposing party might introduce other photographs that suggest a different conclusion on a disputed question of fact. It bears emphasis that, in this instance, plaintiffs did not avail themselves of the option to introduce photographs that depicted damage to the underside of the bumper. By the same token, plaintiffs' counsel was free to have his client reiterate on re-direct examination that the four photographs offered by the defense did not provide a complete picture of the vehicle damage the accident caused. Plaintiffs' counsel also was free during summation to highlight his client's testimony that the vehicle had sustained damage not shown in those four photographs.

A-5317-17T4

In sum, the trial court did not abuse its discretion in admitting the photographs and allowing them to be shown to the jury on a display board at the time of Mr. Slomkowski's cross-examination. The court's subsequent decision to keep the photographs out of the jury room was unnecessary, and to the extent that decision was in error, it redounded to plaintiffs' benefit and was not capable of producing an unjust result. See R. 2:10-2.

## III.

Plaintiffs next raise an embedded hearsay issue, contending that the content of pre-accident medical records, in the form of handwritten notes made by Mr. Slomkowski's primary care physician and rheumatologist, were improperly presented to the jury during the cross-examinations of Mr. Slomkowski and of his expert witness. Any irregularities with respect to the use of the pre-accident medical reports during the cross-examinations of Mr. Slomkowski and his expert were harmless; the information contained in the handwritten notes that was revealed to the jury was admissible under two distinct exceptions to the hearsay rule.

By way of background, records made by Mr. Slomkowski's primary care physician, Dr. William DiGiacomo, showed that in 2004, plaintiff complained of neck and shoulder pain with a tingling sensation in his left ring and pinky

fingers. Medical records made by Mr. Slomkowski's rheumatologist, Dr. Rosemarie DeSantis, a year prior to the motor vehicle accident showed that plaintiff complained of pain and sought treatment and medication related to his neck, bilateral trapezius, shoulder, and upper arm. Dr. DeSantis' medical records also memorialized that between March 2011 and March 2014, Mr. Slomkowski received eleven trigger point injections in his cervical and trapezius muscles.

It bears repeating that the key disputed issue at trial was whether Mr. Slomkowski sustained permanent injury as a proximate result of the March 2012 accident. Plaintiffs did not claim that the accident aggravated a preexisting injury or condition. Furthermore, Mr. Slomkowski testified on direct examination that his pre-accident treatment with Dr. DeSantis was only for knee issues. That testimony opened the door to questions concerning the scope and nature of the pain he had reported to Dr. DeSantis. Accordingly, defense counsel was permitted to pose questions on cross-examination to show that plaintiff had sought and received medical treatment for shoulder pain before the 2012 rear-end collision. It is well-settled in this regard that "[a] plaintiff may be cross-examined as to prior injuries to show that his present physical condition did not result solely from defendant's negligent act, but was caused, wholly or partially,

11

by an earlier accident or pre-existing condition." Paxton v. Misiuk, 34 N.J. 453, 460 (1961) (citing Krug v. Warner, 28 N.J. 174, 185 (1958)).

A.

During the cross-examination of Mr. Slomkowski, defense counsel sought to use the pre-accident medical treatment records to refresh plaintiff's recollection on whether he had complained of pain in his neck, back, and arm before the accident. Defense counsel also wanted to use the records to refresh plaintiff's recollection on whether he received trigger point injections in his trapezius and not mid-back. However, defense counsel did not lay a proper foundation for refreshing his recollection under N.J.R.E. 612. The trial record shows, moreover, that plaintiff did not rely independently on his own recollection after reviewing the documents but rather deferred to or repeated the contents of the report as recited in counsel's question. (As it turned out, plaintiff was unable to decipher the handwriting in these medical records.)

It is inappropriate under N.J.R.E. 612 to have a witness read aloud the substance of a document without offering independent, refreshed recollection of the matters at issue. Lauteck Corp. v. Image Bus. Sys. Corp., 276 N.J. Super. 531, 546 (App. Div. 1994). Although the form of defense counsel's cross-examination of Mr. Slomkowski was improper under N.J.R.E. 612, the error was

harmless. The information in the medical records was presented to the jury by means of defense counsel's questions to show plaintiff's subjective complaints of pain, his request for additional pain medication, and the fact that he received eleven trigger point injections. This information was admissible under N.J.R.E. 803(c)(4) and N.J.R.E. 803(c)(6).

N.J.R.E. 803(c)(4) excepts from the hearsay rule:

> Statements made in good faith for purposes of medical diagnosis or treatment which describe medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof to the extent that the statements are reasonably pertinent to diagnosis or treatment.

The rationale for this exception is that these statements are inherently reliable because "the patient believes that the effectiveness of the treatment he receives may depend largely upon the accuracy of the information he provides the physician." R.S. v. Knighton, 125 N.J. 79, 87 (1991) (quoting K. Brown et al., McCormick on Evidence, § 292 (3d ed. 1984)). The exception assumes that the patient is "more interested in obtaining a diagnosis and treatment culminating in a medical recovery than . . . in obtaining a favorable medical opinion culmination in a legal recovery." In re Registrant, C.A., 146 N.J. 71, 99 (1996) (quoting Biunno, Current N.J. Rules of Evidence, cmt. on N.J.R.E. 803(c)(4) (1994)).

The so-called business records exception, N.J.R.E. 803(c)(6), states:

> A statement contained in a writing or other record of acts, events, conditions, and, subject to [N.J.R.E.] 808, opinions or diagnoses, made at or near the time of observation by a person with actual knowledge or from information supplied by such a person, if the writing or other record was made in the regular course of business and it was the regular practice of that business to make it, unless the sources of information or the method, purpose or circumstances of preparation indicate that it is not trustworthy.

"The purpose of the business records exception is to 'broaden the area of admissibility of relevant evidence where there is necessity and sufficient guarantee of trustworthiness.'" Liptak v. Rite Aid, Inc., 289 N.J. Super. 199, 219 (App. Div. 1996) (quoting State v. Hudes, 128 N.J. Super. 589, 599 (Law Div. 1974)).

We add that in this instance, the pre-accident medical treatment records at issue were received directly from plaintiff's medical providers. The rheumatologist's report was accompanied by a "Certification of Medical Records" that indicated that the records were "true copies of the original medical records of Peter W. Slomkowski kept in the regular course of business." Plaintiff did not object to the authentication or validity of these reports. Those reports contained subjective statements of pain made by plaintiff. As such, those portions of the documents were admissible hearsay under N.J.R.E. 803 (c)(4).

14

The report made by the rheumatologist contained not only plaintiff's complaints of pain admissible under N.J.R.E. 803(c)(4) but also information regarding treatment procedures that were performed on plaintiff prior to the motor vehicle accident, that is, the trigger point injections. The rheumatologist's report is a writing created in the course of regularly conducted business and it was regular practice for the physician to make it. It was accompanied by a certification that indicated the records were true copies of the original document. As a result, the information concerning the trigger point injections elicited during plaintiff's cross-examination was admissible under N.J.R.E. 803(c)(6).

B.

Defense counsel also sought to elicit the same information from the pre-accident reports during the cross-examination of plaintiffs' expert, Dr. Nguyen. Unlike Mr. Slomkowski, Dr. Nguyen was able to read the handwritten notations in the medical records. We hold that the trial court did not abuse its discretion in permitting the use of the medical records during the cross-examination of Dr. Nguyen.

N.J.R.E. 703 permits hearsay statements such as a medical report by a non-testifying expert to be referred to by a testifying expert. N.J.R.E. 703 states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those

15

perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Under N.J.R.E. 703, the hearsay fact or data would be permitted only for the limited purpose of understanding the basis of the testifying expert's opinions, not for the truth of the matter asserted. See Agha v. Feiner, 198 N.J. 50, 63 (2009). In this instance, no limiting instruction was given. It thus appears that the facts elicited from the medical records were offered for the truth of the matter asserted, that is, that plaintiff prior to the March 2012 accident complained of pain in the shoulder area and had trigger point injections. However, for the same reasons set forth in the preceding subsection of this opinion with respect to the cross-examination of Mr. Slomkowski, the information gleaned from the medical reports during the cross-examination of Dr. Nguyen was admissible under N.J.R.E. 803(c)(4) and N.J.R.E. 803(c)(6).

Importantly, this is not a situation such as in James v. Ruiz, where a party was attempting to introduce through the "back door" the opinion of a non-testifying expert regarding a complex medical diagnosis. 440 N.J. Super. 45, 72 (App. Div. 2015). Rather, as noted above, the facts elicited from the pre-accident medical records focused on plaintiff's subjective complaints of pain and

16

the fact that plaintiff received trigger point injections on certain points of his body on certain dates. In these circumstances, the trial court did not abuse its discretion in permitting the use of plaintiff's prior medical records during the cross-examination of either plaintiff or Dr. Nguyen.

IV.

For the foregoing reasons, plaintiffs have not presented sufficient legal justification to set aside the jury verdict.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5317-17T4